# IN THE COURT OF APPEALS OF IOWA

No. 22-0181
Filed November 17, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ENOC ALVARENGA,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court of Dubuque County, Michael J. Shubatt,

Judge.

Enoc Alvarenga appeals his convictions for enticing a minor and indecent

contact with a child. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

A jury found Enoc Alvarenga guilty of enticing a minor and indecent contact with a child. The district court sentenced him to prison for terms not exceeding ten and two years respectively, to be served consecutively.

On appeal, Alvarenga contends the district court abused its discretion in (1) denying his motion in limine to exclude evidence of his arrest and (2) imposing consecutive sentences.

## I.     Limine Ruling

Alvarenga's pretrial motion in limine sought to prevent the State "from introducing details of [his] arrest." He asserted evidence "that he resisted and/or attempted to flee . . . would cause the jury to improperly conclude that [he] was avoiding law enforcement due to the allegations stemming from the instant case" or might force him "to reveal a prior bad act." Citing Iowa Rule of Evidence 5.403, he argued the evidence, while relevant, was "substantially outweighed by unfair prejudice." At a hearing on the motion, the prosecutor noted that Alvarenga was arrested on a warrant on the underlying charges and his "attempt[] to flee" was evidence of his "consciousness of guilt" that was "something for the jury to consider." Alvarenga responded that admission of the evidence would put the defense in "an unfair situation." The district court denied the motion, reasoning the evidence placed the defense in "a difficult situation" rather than an "unfair situation," requiring a strategic decision on how to respond. The court stated trial strategy was an insufficient ground to exclude evidence that "would normally come in."

At trial, an officer with the Dubuque Police Department testified he was at a convenience store to check on an abandoned vehicle. He ran the plate, which came back to Alvarenga, who he "knew to have an active warrant for his arrest." Momentarily, he "observed [Alvarenga] walking toward[] [him] in the direction of his vehicle." He "grabbed onto [Alvarenga's] right arm and said, hey, you got warrants for your arrest and went to go place him into handcuffs." As he did so, Alvarenga "pulled his arms away" and both individuals "went to the ground." According to the officer, "[t]here was a struggle on the ground there for a second" and Alvarenga got away, and ran "along the front of the store again while [he] still had a hold of [Alvarenga's] shirt." The officer kicked Alvarenga's "feet from underneath him," and "he tripped and fell."

Alvarenga did not lodge a trial objection to this testimony. He did object to the offer of surveillance footage from the convenience store, citing "the objection that was previously made" during pretrial motions. The district court noted and overruled the objection, and the video was played. On cross-examination, Alvarenga elicited an admission from the officer that people could run for any number of reasons. He did not refer to the prior bad act that undergirded his motion in limine.

On appeal, Alvarenga essentially reprises the argument he made at the hearing on his motion. The State responds that he failed to preserve error.

"Generally denial of a motion in limine does not preserve error for appellate review." *State v. Thoren*, 970 N.W.2d 611, 620–21 (Iowa 2022). But if the motion "declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial." *Id.* at 621.

We conclude the district court made a final ruling on the motion in limine. Although the court initially questioned how the State would admit evidence of the arrest warrant, it ultimately decided to assume "that there was a warrant [and] that [Alvarenga] ran." Based on that assumption, the court unequivocally ruled the flight evidence was admissible. *See Quad City Bank & Tr. v. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 90–91 (Iowa 2011) ("The court did not equivocate or state it would reconsider its ruling at trial" and, "[a]ccordingly, the court's ruling had the effect of a definitive evidentiary ruling."). Because the ruling left scant, if any, room for doubt as to the admissibility of the flight evidence, Alvarenga had no obligation to object to the evidence at trial in order to preserve error.

As for the scope of the final ruling, we are persuaded it covered the probative value and prejudicial effect of the evidence under Iowa Rule of Evidence 5.403 as well as potential limits on the use of prior bad acts evidence under Iowa Rule of Evidence 5.404(b). Because Alvarenga raised these arguments in the district court, he preserved error. We proceed to the merits.

"It is well-settled law that the act of avoiding law enforcement after a crime has been committed may constitute circumstantial evidence of consciousness of guilt that is probative of guilt itself." *State v. Wilson*, 878 N.W.2d 203, 211 (Iowa 2016) (citations omitted). At the same time, the evidence has to be treated "with caution." *Id.* at 212. "[T]he probative value of evidence showing a defendant avoided apprehension turns on the circumstances under which the avoidance occurred." *Id.* at 213. Specifically, "[f]or any valid inference of guilt to be drawn by the jury from flight evidence, the district court must assure itself there is some

evidence in the record to support the inferential chain between the defendant's act of avoidance and consciousness of guilt for the crime charged." *Id.*

> [T]he inferential chain connecting an act of flight to guilt for the crime charged can reasonably be drawn only when the timing of the act suggests the sudden onset or the sudden increase of fear in the defendant's mind that he or she will face apprehension for, accusation of, or conviction of the crime charged.

*Id.* (internal quotations and citation omitted). "The immediacy requirement is important. It is the instinctive or impulsive character of the defendant's behavior, like flinching, that indicates fear of apprehension and gives evidence of flight such trustworthiness as it possesses." *Id.* That said, "establishing immediacy is less critical to establishing the probative value of flight when the evidence conclusively establishes the defendant knew he or she was suspected of the charged crime at the time of flight." *Id.* at 214. Once a district court admits such evidence, it is for the jury to decide whether to credit the inferential chain leading from a particular act of the defendant to guilt for the crime charged." *Id.* at 215.

Alvarenga concedes *Wilson* is the governing precedent but argues the opinion is distinguishable on its facts. He asserts that, unlike *Wilson*, his "attempt to avoid arrest cannot be directly tied to the allegations in this case." He points out the incident giving rise to the charges occurred twenty days before his attempt to flee, an officer visited him to obtain a DNA sample in the interim and did not call him for an interview after saying he might, and "[n]o developments between [the visit and his arrest] would have led [him] to believe circumstances had materially changed." In his view, his attempt to flee was attributable to the prior bad act he discussed at the motion hearing, making the flight "irrelevant to any legitimate issue in dispute."

We are persuaded *Wilson* is on point factually as well as legally. There, the court cited "[s]everal significant events related to the charged crimes . . . in the days immediately leading up to the flight from which a jury could reasonably infer that [the defendant] fled from law enforcement due to his consciousness of guilt for those crimes." *Id.* at 216. The same is true here. A jury reasonably could have inferred that the officer's contact with him to obtain a DNA sample together with the request for a follow-up interview placed Alvarenga on notice that he was a suspect in the current matter. A jury could have surmised that he "experienced a sudden increase in fear that he would be accused of the charged crimes." *Id.* We conclude the arrest and flight evidence was probative of Alvarenga's consciousness of guilt, just as it was in *Wilson*.

We turn to the question of whether the evidence was unfairly prejudicial. *See id.* at 215-16. "Unfair prejudice arises when the evidence appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or . . . may cause a jury to base its decision on something other than the established propositions in the case." *Id.* at 216 (internal quotations and citation omitted).

The officer's testimony was fairly brief. *See id.* at 217 (noting flight testimony "was not presented in an inflammatory manner, as it was brief relative to the length of the trial as a whole"). Although his description of the tackle was vivid, it was not the type of evidence relative to the underlying crimes that would have prompted the jury to punish him. *Id.* As for the surveillance video, it recorded the door of the store from an interior vantage point and captured people momentarily running past the door, with the faces of the runners out of the camera's range. True, admission of the flight evidence forced Alvarenga to decide

whether he would offer evidence of a prior bad act unrelated to the underlying crimes to establish an alternative basis for fleeing. But Alvarenga elected not to offer that evidence. We conclude the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice and the district court did not abuse its discretion in concluding the evidence was admissible.

Even if the evidence should not have been admitted, we must engage in a harmless-error analysis to determine whether the admission amounted to reversible error. *See id.* at 218–19. "The type of prejudice in our harmless error analysis differs from the rule 5.403 prejudice." *State v. Sullivan*, 679 N.W.2d 19, 30 (Iowa 2004). We presume prejudice and reverse unless the record affirmatively establishes a lack of prejudice. *Id.* The record may affirmatively establish a lack of prejudice where the unchallenged evidence is overwhelming. *See Thoren*, 970 N.W.2d at 636–37; *State v. Parker*, 747 N.W.2d 196, 210 (Iowa 2008).

The child provided compelling testimony of the circumstances underlying the charges. Her testimony together with other evidence overwhelmingly supported findings of guilt on both charges rendering any error in admitting the flight evidence harmless.

## II. *Consecutive Sentences*

Alvarenga contends the district court abused its discretion in imposing consecutive sentences. *See State v. August*, 589 N.W.2d 740, 744 (Iowa 1999) (setting forth standard of review). We disagree. In running the sentences consecutively, the district court agreed with the recommendation contained in the presentence investigation report and cited "the nature of the offense[s]" and "the

fact that although they were proximate in time[,] they [were] separate acts, separate crimes." We discern no abuse of discretion in the statement of reasons.

We affirm Alvarenga's judgment and sentence.

**AFFIRMED.**